A90A2311. WIMPEY v. BISSINGER.
(403 SE2d 78)

McMURRAY, Presiding Judge.

Plaintiff, Harry R. Bissinger, Jr., brought suit against Leon Wimpey in the State Court of DeKalb County and couched his complaint, as amended, in two counts. In Count 1, plaintiff alleged defendant owed him the amount of $15,000 plus interest pursuant to a promissory note. In Count 2, he alleged defendant was indebted to him in the same amounts pursuant to a contract.

The "promissory note" or "contract" upon which plaintiff's action was based was attached to and made a part of the complaint. Denominated as an "Agreement," it is a handwritten document which reads as follows: "1. Leon to pay Harry ½ of Harry's 'out of pocket' expenses on Trentwalk settlement with creditors, not to exceed ½ of $25,000. Leon also to repay anything paid by Harry to Kitchens, Kelley, Gaynes in excess of Harry's ½ share. Leon's obligation to be evidenced by a promissory note. 2. *Terms of Note.* One year term. May renew for 1 yr. by paying interest for 1 yr. Rate — 9% per annum. 3. *Collateral.* Kitchens, Kelley, Gaynes to take a 2nd mortgage on Leon's house for unpaid legal fees and expenses. Harry to take 3rd mortgage to secure sum due under promissory note from Leon to Harry." The agreement was signed on December 15, 1987, by plaintiff, defendant and Gary Shmerling (on behalf of Kitchens, Kelley, Gaynes, Huprich and Shmerling).

Defendant answered the complaint and denied any liability to plaintiff. Thereafter, each party moved for summary judgment.

Plaintiff submitted an affidavit in support of his summary judgment motion. He testified that he is a director, president and sole shareholder of HRB Investments, Inc. ("HRB"); that HRB and New South Properties, Inc. ("New South") formed Trentwalk Ltd. ("Trentwalk"), a joint venture, to acquire, develop and market townhouses in Decatur, Georgia; that Trentwalk acquired the townhouses from the Nationwide Lending Group ("Nationwide"); that plaintiff and defendant personally endorsed certain loans used to finance construction of the townhouses; that Trentwalk retained the law firm of

Kitchens, Kelley, Gaynes, Huprich & Shmerling to represent it; and that plaintiff, defendant, and their respective corporations were jointly and severally liable for the payment of legal fees to Kitchens, Kelley, Gaynes, Huprich & Shmerling.

Plaintiff further testified that Trentwalk subsequently suffered cash flow problems and fell in arrears on its obligations; that Trentwalk sold the townhouses back to Nationwide pursuant to a written settlement agreement; that plaintiff and defendant executed the settlement agreement in their respective corporate capacities and individually as "guarantors"; and that, pursuant to the settlement agreement, it was incumbent upon HRB, New South, plaintiff and defendant, as guarantors, to satisfy Trentwalk's obligations to creditors in the amount of $31,380.45.

With regard to the agreement which is the subject of this action, plaintiff testified that, prior to closing the Nationwide settlement agreement, defendant informed plaintiff that neither defendant nor New South had the funds to pay the obligations to creditors; that HRB did not have the funds to cover its obligations so plaintiff "offered to cover the outstanding balance due at closing" if defendant would agree to pay plaintiff ½ of the sums advanced by plaintiff; that defendant accepted plaintiff's offer; that Gary Shmerling demanded $5,000 from plaintiff and defendant to cover a portion of the legal fees due and owing; that plaintiff was willing to pay $25,000 to Trentwalk's creditors and $5,000 to its attorneys if defendant would execute an agreement to repay one-half of the sums advanced by plaintiff; that plaintiff agreed to permit defendant to repay one-half of the sums "in one year at 9% per annum interest with an option to renew for another year if interest due at the end of the first year was paid"; that defendant agreed to the terms of plaintiff's offer; and that the terms were reduced to writing in the handwritten document set forth above.

Finally, plaintiff testified that, at his behest, his wife "wrote a check for $25,000.00 payable to HRB . . . from jointly owned funds deposited in an account under her name. The check was then deposited in HRB's operating account. . . . At the closing, a payment of $25,000.00 was made by [plaintiff] for the Joint Venture creditor obligation through a check drawn on the HRB . . . operating account. . . . The remaining balance due creditors of $6,380.45 was covered through a promissory note to Nationwide signed by [defendant] and [plaintiff] in [their] respective corporate and individual capacities. . . . [A] payment of $5,000.00 was made by [plaintiff] for the Joint Venture legal fee obligation through a check drawn on the HRB . . . operating account. . . . Subsequent to the closing, a promissory note for $12,500.00 and Deed to Secure Debt made payable to [plaintiff] was sent to [defendant]. . . . [Defendant] refused to sign the

note or execute the Security Deed. . . . [Defendant] refused to pay [plaintiff] the $12,500.00 and refused to pay [plaintiff] the $2,500.00 . . . ."

In opposition to plaintiff's motion for summary judgment and in support of his own summary judgment motion, defendant submitted an affidavit in which he testified: "All payments to the creditors of Trentwalk were made by a closely held corporation by the name of HRB. . . . The $25,000.00 referred to in Paragraph 1 of the Agreement was paid by HRB . . . and not by the Plaintiff personally. . . . HRB . . . acquired the $25,000.00 with which to pay the creditors of Trentwalk from . . . the Plaintiff's wife, and not the Plaintiff. . . . HRB . . . paid $5,000.00 to the law firm . . . [Plaintiff] paid no money to [the law firm] pursuant to the Agreement sued on. [Defendant] never signed a contract agreeing to reimburse HRB . . . for any payments it made to anyone."

Following a hearing, the trial court granted plaintiff's motion for summary judgment and denied defendant's motion for summary judgment. Defendant appeals. *Held*:

1. Defendant takes the position that he cannot be held liable to plaintiff because plaintiff did not make the payments contemplated in the agreement. We disagree.

"If there is a valid consideration for a promise, it does not matter from whom it moves and it may be given by the promisee or by some other person; the promisee may sustain his action, though a stranger to the consideration." OCGA § 13-3-42 (d). It follows that defendant is liable to plaintiff pursuant to the agreement whether it was plaintiff, plaintiff's wife or HRB, which made the payments contemplated in the agreement.

2. We cannot comprehend defendant's assertion that plaintiff is not the real party in interest. Plaintiff, the promisee, is entitled to maintain this action even though he may have been a stranger to the consideration. OCGA § 13-3-42 (d).

3. Defendant's contention that plaintiff's action is barred by the statute of frauds is wholly without merit. Defendant's obligation did not constitute a promise to answer for the debt of another. Defendant promised to answer for his own debt. Besides, defendant's promise was in writing and signed by defendant. OCGA § 13-5-30.

4. The agreement sued upon is not, as defendant contends, a mere agreement to agree in the future. It is a promise for a promise. Plaintiff promised to pay plaintiff's and defendant's debts and defendant promised to repay plaintiff.

5. The trial court did not err in granting plaintiff's motion for summary judgment and in denying defendant's motion for summary judgment.

*Judgment affirmed. Sognier, C. J., and Carley, J., concur.*

DECIDED FEBRUARY 28, 1991.

*Carl V. Kirsch*, for appellant.
*Theodore G. Frankel*, for appellee.